UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN C. WILSON,

       Plaintiff,

    v.

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

       Defendant.

CASE NO. C10-993RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the motion of Defendant Hartford Insurance Company of the Midwest ("Hartford") to exclude the testimony of expert witness Lorraine Davis. Dkt. # 61. Plaintiff Steven Wilson requested oral argument; Hartford did not. The court finds oral argument unnecessary. For the reasons stated below, the court DENIES the motion.

## II. BACKGROUND & ANALYSIS

The parties disagree sharply over the value of 108 photographic transparencies stolen from Mr. Wilson's home. Hartford believes they are worth $324. Mr. Wilson, who compiled the transparencies by choosing the best among the tens of thousands of photographs he took over the course of a 40-year career as a professional wildlife photographer, believes that they were priceless. Ms. Davis, an accredited appraiser of photography, believes that they were worth about $235,000.

ORDER – 1

There is no dispute that Mr. Wilson, who has retired from professional photography, had no intention to sell or otherwise commercialize any of the transparencies. Hartford is convinced that this dooms any attempt to determine a market value for the transparencies. In Hartford's view, because Mr. Wilson had no intent to place the transparencies on the open market, he cannot look to what the transparencies would have fetched on the open market as a measure of their value.

The court has twice rejected Hartford's view as a matter of law. It did so the first time in a March 25, 2011 order denying the parties' motions for summary judgment:

> Mr. Leon[,] [Hartford's expert witness,] and Hartford jointly rely on the erroneous premise that the undisputed fact that Mr. Wilson had no intent to sell or otherwise commercialize the stolen transparencies is relevant to their value. They contend that this means that the transparencies cannot be valued as property to be sold for commercial use. They are wrong as a matter of law. Mr. Wilson's subjective intent is irrelevant. The fair market value analysis requires the fact finder to assume that the seller is willing to part with his property, and will seek the highest price the market will bear.

Dkt. # 53 at 3-4. Hartford disagreed with the court's ruling, and moved for reconsideration. The court denied that motion in an April 15, 2011 order, and thus rejected for a second time Hartford's theory of valuation.

Ms. Davis took an approach to valuing Mr. Wilson's transparencies that is consistent with the court's ruling. She noted that the primary value of a transparency is not the transparency itself, but the right to use the transparency to make reproductions. She considered the income received from licensing reproduction rights for other professional-quality wildlife photographs, and using this stream-of-income approach, estimated the total value of the stolen transparencies at about $235,000.

Hartford deposed Ms. Davis on April 8, 2011. Although the court had by then rejected Hartford's view that Mr. Wilson's intent not to commercialize the transparencies made it impossible to assign them a market value, Hartford's counsel used the deposition, in large part, to attempt to badger Ms. Davis into accepting Hartford's view.

ORDER – 2

Early in the deposition, Hartford's counsel showed Ms. Davis evidence that Mr. Wilson had not commercialized the transparencies prior to their theft, and had no intent to do so in the future. Ms. Davis was not previously aware of Mr. Wilson's subjective intent. Hartford seems to think this highly significant. The court does not. The court has already ruled that Mr. Wilson's subjective intent does not matter for purposes of assigning a market value. Had Ms. Davis been informed sooner of Mr. Wilson's subjective intent, it would not have affected her opinion of the value of the transparencies. The court says this with confidence because Ms. Davis said it with confidence during her deposition, dozens of times.

> Q:   I would like you to assume, for a moment, that [Mr. Wilson] never intended to secure any income. . . . Does that change your opinion?
>
> A:   No, because the estate can still go on to get income from it.

Davis Dep. at 14-15.[1]

> Q:   Would you agree . . . that given the fact that he had no income expectation for these photo transparencies, that he's not entitled to a lost income analysis . . . recompensing him for his loss?
>
> A:   The intrinsic value still lies there.

*Id.* at 15.

> Q:   [W]ouldn't you agree that for him, as opposed to maybe his estate, he has no right to a future income analysis, given his intention?
>
> A:   No. Because the intention – he can change his mind, and the intrinsic value is still there. The intrinsic value never changes.

*Id.* at 20-21.

> Q:   [W]ould you agree that a lost future income approach is inappropriate, given the total intention not to have such income?
>
> A:   No. It's still intrinsic value. Sorry.

---

[1] A complete transcript of Ms. Davis's deposition is attached as Exhibit 1 to the declaration of Mr. Wilson's counsel. Rodihan Decl. (Dkt. # 67), Ex. 1. For the sake of brevity, the court's quotations of the deposition transcript occasionally omit objections and other interjections, where their omission is immaterial.

*Id.* at 21.

A:     Whether he chooses to use [the transparencies] or not is his business, but the value's still there.

*Id.* at 22.

Q:     Have I convinced you . . . that he had no intention to use these commercially?

A:     Correct.

Q:     All right. Now, can we agree that the income stream approach is incorrect, given that?

A:     They still have intrinsic value.

*Id.* at 51.

At some point, counsel modified his tactic of asking the same question over, and over, and over again, by questioning Ms. Davis's honesty and professionalism while asking the same question over, and over, and over again.

Q:     To be intellectually honest, we have to take the income stream off the table, with respect to Mr. Wilson's claim, do we not?

A:     The intrinsic value is still there. Whether he chooses to use it or not is his prerogative.

*Id.* at 52-53; *see also id.* at 52, 57 (additional comments on Ms. Davis's lack of "intellectual honesty").

Q:     So, you're an expert, you have ethics, you have professional responsibility?

A:     Yes.

*Id.* at 54.

The basis of Hartford's current motion is apparently that, by badgering and belittling Ms. Davis, it was able to obtain a few answers that, when stripped of context, give superficial support to Hartford's claim that Ms. Davis abandoned her stream-of-income valuation approach.

ORDER – 4

| | |
|---|---|
| Q: | Mr. Wilson has said that he never intends to do that [commercialize his transparencies.] Now come on. It's time to be honest. |
| A: | Yes. Yes. I would have to pull that. |
| Q: | Pull the income? |
| A: | Yes, approach. |
| Q: | Lost income approach? |
| A: | Right. |

*Id.* at 55.

Reading the deposition in its entirety reveals that Hartford's counsel was able to obtain these "concessions" only by having Ms. Davis assume that Mr. Wilson had taken steps to irrevocably destroy the legal right to make and sell reproductions from his transparencies. When not being verbally battered into accepting this contrary-to-fact assumption, Ms. Davis stuck to the opinion that she consistently expressed throughout the deposition.

| | |
|---|---|
| Q: | I intend to skip, in my questions, all references to what you call the stream of income, because I believe we're at the point where that's no longer part of your opinions. Is that fair? |
| A: | It's still in the intrinsic value. |

*Id.* at 70.

| | |
|---|---|
| Q: | There's a lot of intellectual dissidence in this. |
| A: | The – the – the intrinsic value, even if it isn't valuable to him, it is valuable to somebody. |

*Id.* at 82.

Although Mr. Wilson's counsel could not stop Hartford's counsel's inappropriate questioning, he was able to ask his own questions, which left no doubt that Ms. Davis's opinion of the value of the transparencies was not affected by Mr. Wilson's disinterest in commercializing them.

ORDER – 5

Q: So if the owner of a transparency prefers to keep it private to himself, does that make the transparency worth any less?

A: No. The intrinsic value is still there because it's – again, it's what the highest and best use would be for that.

*Id.* at 105.

Q: [Hartford's counsel] asked you a lot of questions about Mr. Wilson's own preference not to license the transparencies for commercial use. . . . Does any of that change your opinion on the market value of those transparencies?

A: No.

*Id.* at 108.

Q: Can you tell us whether any of the information Mr. Hayes presented to you today changes your opinion on the market value – on the actual cash value of Mr. Wilson's 108 stolen transparencies?

A: No.

Q: You mean it does not change your opinion?

A: No. It doesn't change my opinion. I still believe that the intrinsic value of transparencies are in the image, what the image was of, the historical significance, the composition. They were his best works of his entire life, as far as he was concerned. I believed him, and in my opinion, that's why that valuation – my valuation, I think, is appropriate.

*Id.* at 108-09.

Undaunted, Hartford's counsel resumed questioning, returning to the same tactics.

Q: Now, are you waffling on that, one last time?

A: Again, I always have to do it because –

Q: Waffle?

A: -- the intrinsic value of a negative and a slide is in the reproduction rights. That [Mr. Wilson] chose not to use those reproduction rights doesn't mean that the value goes away.

ORDER – 6

*Id.* at 122.  The court notes that in this series of questions, Hartford's counsel accused Ms. Davis of "waffling" for the third and fourth time over the course of the deposition. He would go on to accuse her twice more.  *Id.* at 72, 74, 123, 124.  Later, he again managed to badger Ms. Davis into suggesting that she could not use her lost-income valuation approach.  Having succeeded in this dubious feat, counsel offered Ms. Davis a sarcastic "Congratulations."  *Id.* at 124.

Nonetheless, Ms. Davis returned, as she did over and over again, to the opinions she consistently expressed.

> Q:   There's no intrinsic value to something that's not put commercially on the market.  We've already agreed, correct?
>
> A:   No.  We haven't agreed that there's no intrinsic value.

*Id.* at 127.

> Q:   Have you ever had another case where somebody has a personal collection that's been restricted from commercial use where the valuation has, nonetheless, been a commercial evaluation?  Have you ever had a case like that?
>
> A:   No.
>
> Q:   Okay.  Because it's an inherent contradiction, isn't there?
>
> A:   I know.  There is.  There's a complete contradiction, and that's why, because there's an intrinsic value, and if he says, I'm not going to do it, but that still doesn't erase the value, it's just that he's not using the value at the moment.

*Id.* at 128.

Having reviewed Ms. Davis's deposition, the court now turns to Hartford's argument that she should not be permitted to testify.  Hartford first asserts that she abandoned her stream-of-income valuation approach at her deposition.  It then contends that she did not perform any other type of valuation analysis, so she should not be permitted to offer a new analysis now.  The first assertion is manifestly false.  Hartford was able to support that assertion only by misleadingly presenting excerpts of Ms.

ORDER – 7

Davis's deposition.  Hartford's request that she be prevented from offering new valuation opinions is an empty one, because she has no intent to do so.  She intends to rely on the valuation opinions she has consistently expressed throughout this litigation.

The court expects that Ms. Davis will have little difficulty explaining her valuation opinions in her direct testimony at trial.  Moreover, at trial, she will not be subject to the same relentlessly repetitive and otherwise inappropriate questioning to which she was subject at her deposition.  The court has seriously considered various alternatives to address counsel's inappropriate manner of examination.  For now, the court will simply admonish counsel that if he repeats his deposition performance when examining Ms. Davis for trial, he will face sanctions personally, and his client may face an adverse jury instruction.  There are no doubt many ways to challenge Ms. Davis's opinions on cross-examination, but there will be no repeat of the inappropriate manner in which counsel conducted her deposition.

The court reiterates the legal ruling it has made twice already:  Mr. Wilson's disinterest in marketing the stolen transparencies does not affect their market value.  This is a legal ruling, not a factual one.  No one, neither a witness nor a lawyer, will be permitted to contradict that legal ruling before the jury.

### III.  CONCLUSION

For the reasons stated above, the court DENIES Hartford's motion to exclude Ms. Davis's testimony.  Dkt. # 61.

DATED this 5th day of July, 2011.

The Honorable Richard A. Jones
United States District Judge

ORDER – 8