HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN C. WILSON,

    Plaintiff,

v.

HARTFORD INSURANCE COMPANY OF THE MIDWEST,

    Defendant.

CASE NO. C10-993RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on motions in limine (Dkt. ## 65, 68) from Defendant Hartford Insurance Company of the Midwest ("Hartford") and Plaintiff Steven Wilson. The court GRANTS each motion in part and DENIES each motion in part, as stated below.

Before ruling on the parties' motions, the court notes that its rulings herein are typically limited. In particular, where the court declines to exclude a piece of evidence, that ruling does not mean that the evidence will necessarily be admitted at trial. The party attempting to rely on the evidence at trial must still lay a foundation for the evidence and satisfy other admissibility requirements.

## II. HARTFORD'S MOTION

Hartford divides its motion into 17 subparts, each designated with a letter. The court uses the same labeling to address each part.

ORDER – 1

Part A

Hartford seeks to exclude all evidence of the parties' financial situations. The court grants this motion to the extent it seeks to exclude evidence of either party's net worth, or references to either party's relative wealth or poverty. Such evidence has no relevance, or at least none that either party has explained. On the other hand, the court will not exclude relevant evidence merely because it bears on some aspect of a party's finances. For example, if Mr. Wilson wishes to present evidence that it is in Hartford's financial interest to delay payment on claims, he may do so. As another example, if a party wishes to present evidence related to Mr. Wilson's income from photographic transparencies, it may do so, as this is relevant to the value of the stolen transparencies.

Part B

Hartford seeks to exclude evidence of any litigation other than this one in which Hartford has been involved. The court rules more narrowly. Reference to other litigation is permissible if it is relevant to an issue in this case. For example, Mr. Wilson apparently intends to present evidence that the amount Hartford offered for the transparencies in this case is a tiny fraction of the amount that Hartford paid to resolve other litigation involving the loss of photographic material. Provided that Mr. Wilson has an appropriate witness to introduce such evidence, that evidence is relevant to whether Hartford acted in good faith. As another example, Mr. Wilson wishes to inquire into whether any of Hartford's expert witnesses have testified in other litigation involving Hartford. That inquiry is relevant, as it might reveal the witnesses' bias (or lack thereof).

The court will not, however, permit lengthy digressions into the circumstances of other litigation. Any evidence of other litigation should be limited, given its limited relevance to this litigation.

Part C

Hartford seeks to exclude any expert testimony, witness, or document that has not been previously disclosed. The court denies this motion because Hartford cited no

ORDER – 2

particular evidence that it wished to exclude. The court cannot resolve a motion that provides no factual context.

Part D

The court denies Hartford's motion to exclude evidence that the American Society of Media Photographers ("ASMP") considers $1,500 to be a standard value for an original photographic image lost in transit. There are many reasons to question whether this valuation is meaningful in this case, but those questions are fruitful grounds for cross-examination. The court finds that the ASMP valuation is at least potentially relevant as evidence of an industry-wide valuation of photographic material, and that there is no undue prejudice from its admission.

Part E

The court denies Hartford's motion to exclude evidence of Mr. Wilson's past licensing income for other photographic images. This evidence is relevant, as it helps reveal the market value of Mr. Wilson's work. That Mr. Wilson has no evidence of income from the specific transparencies stolen from his home is no reason to preclude him from presenting evidence that other images he created are of similar quality and were commercially valuable.

Part F

The court denies Hartford's motion to prevent Mr. Wilson from "mention[ing] or stat[ing] the probable testimony of a witness who is absent, unavailable, or not called to testify in this case." Def.'s Mot. at 7. Like Mr. Wilson, the court has no idea what Hartford is targeting with this motion. If, during an opening statement, an attorney promises testimony that no witness delivers, opposing counsel will no doubt point out the broken promise during closing argument. If, on the other hand, a witness discusses another person's anticipated statements or testimony, then counsel can make a hearsay objection.

ORDER – 3

Part G

The court grants in part and denies in part Hartford's motion to exclude non-expert testimony as to the value of the stolen transparencies. The court will not permit any lay witness (except Mr. Wilson) to opine on the value of the stolen transparencies. Lay witnesses may, however, offer testimony within the scope of their personal knowledge regarding the quality of Mr. Wilson's or other photographers' works. For example, if another professional photographer testifies, he may offer testimony that he sold his own works at a certain price, and he may also offer testimony that he observed Mr. Wilson's work and believed it to be of comparable quality.

Part H

The court grants Hartford's motion to exclude Lorraine Davis's expert report. Ms. Davis's report is hearsay. Contrary to Mr. Wilson's belief, Fed. R. Evid. 703 does not permit the admission of expert reports, it merely permits, in certain circumstances, the admission of otherwise inadmissible evidence where an expert witness relied on it in forming her opinion. Plainly, Ms. Davis did not rely on her own report in forming her opinions in this case. Ms. Davis may, assuming counsel satisfies the prerequisites, rely on the report to refresh her memory. That does not make the report admissible. Similarly, any party may use her report to impeach her, but this again does not make the report admissible. Finally, the court notes that Mr. Wilson is mistaken in his belief that a party's expert's report is equivalent to a party's admission within the meaning of Fed. R. Evid. 801(d)(2). An expert is expected to form her own opinions, not the opinions of the party who hired her.

The court's rulings with respect to Ms. Davis's report apply equally to any expert report in this case. The court notes that parties often, for ease of presentation of evidence, mutually agree that expert reports are admissible. The court will not, however, force parties to reach such an agreement.

ORDER – 4

Part I

The court denies Hartford's motion to exclude evidence of Hartford policies other than the one at issue in this case. This ruling is limited. So far as the court is aware, the sole evidence of this type that Mr. Wilson seeks to introduce is evidence of the Hartford predecessor to the homeowner policy that he purchased. He contends that Hartford marketed his policy as an improvement over its predecessor because it provided better coverage for the property of retirees. That evidence is potentially relevant to Mr. Wilson's claim that Hartford violated the Consumer Protection Act.

If Mr. Wilson attempts to introduce any other evidence of the language of other insurance policies, Hartford is free to object on relevance grounds.

Part J

The court denies Hartford's motion to exclude evidence regarding Hartford's handling of other insurance claims. Again, this ruling is limited. So far as the court is aware, the only evidence of this type that Mr. Wilson seeks to introduce is evidence that Hartford processed other claims involving loss of or damage to photographs or transparencies, and paid much more to those insureds than it offered him. If Mr. Wilson establishes a sufficient foundation, this evidence could help prove that Hartford's valuation of Mr. Wilson's transparencies was unreasonably low.

If Mr. Wilson attempts to introduce any other evidence of Hartford's handling of other insurance claims, Hartford may object on relevance grounds.

Part K

The court denies Hartford's motion to preclude evidence or argument that Hartford denied coverage to Mr. Wilson. Mr. Wilson does not claim that Hartford flatly refused him any compensation. He instead contends that for an unreasonable period of time, Hartford refused to provide sufficient compensation by insisting that his claim was subject to a $2,500 policy limit applying to business property. He is free to characterize

ORDER – 5

that decision as a denial of coverage, just as Hartford is free to argue or present evidence that it was a reasonable interpretation of its coverage responsibilities.

Part L

As to Hartford's motion to exclude Mr. Wilson's declaration, the court provisionally grants the request, subject to Mr. Wilson attempting at trial to satisfy the standard of Federal Rule of Evidence 703. Mr. Wilson's declaration is plainly hearsay, and thus he cannot offer it on his own behalf. On the other hand, Ms. Davis, as an expert witness, may inform the jury that she relied on Mr. Wilson's declaration in forming her opinions. Fed. R. Evid. 703. Unless Mr. Wilson satisfies the requirements for admissibility of hearsay evidence underlying an expert opinion, the court will not separately admit the declaration as evidence. Fed. R. Evid. 703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.").

Part M

The court grants Hartford's motion to exclude evidence of published court decisions. At best, court decisions relating to the value of photographic material are marginally relevant evidence of the range of values assigned to such material. At worst, introducing court decisions wastes jury time by requiring an explanation of the background of each case and confuses the jury by suggesting that someone other than this court will instruct them as to the law. The court finds that the probative value of such decisions is substantially outweighed by their potential for prejudice and waste of time.

Part N

The court grants Hartford's motion to exclude evidence of this court's rulings on summary judgment. The court's prior rulings will neither be presented nor mentioned to the jury.

ORDER – 6

Part O

The court denies Hartford's motion to exclude evidence of Mr. Wilson's photographs other than the stolen transparencies. For reasons that the court mentioned in denying Part E of Hartford's motion, this evidence is relevant to Mr. Wilson's effort to establish the quality and value of his work. Should Mr. Wilson's discussion of other photographs become unreasonably cumulative, the court will consider limiting the quantity of that evidence.

Part P

The court grants Hartford's motion to exclude any evidence or questioning regarding the reasons Crystal Perry left her employment at Hartford. Mr. Wilson does not oppose this motion.

Part Q

The court denies Hartford's motion to exclude evidence of the "cost approach" for valuing the stolen transparencies. The "cost approach," as applied in this case, would value the stolen transparencies by the cost of replacing them, including, for example the cost of travel. So far as the court is aware, no expert witness (including Ms. Davis) has offered an opinion valuing the transparencies using the cost approach. No expert witness may introduce new opinions at trial. Mr. Wilson, however, need not meet the requirements for presentation of expert testimony. To the extent that he has personal knowledge relevant to the valuing the transparencies using the cost approach, he may offer it.

### III. MR. WILSON'S MOTION

Mr. Wilson divides his motion into 14 parts, each designated with a number. The court uses the same labeling to address each part.

Part 1

The court denies Mr. Wilson's motion to exclude Steve Leon's opinion that the stolen transparencies were worth $3 each. Mr. Wilson believes that Mr. Leon has no

ORDER – 7

proper foundation for his opinion, but the court finds that his attacks on Mr. Leon's valuation approach affect the weight of his opinion, not its admissibility.

Part 2

The court grants Mr. Wilson's motion to exclude any evidence or argument that his disinterest in commercializing the stolen transparencies is relevant to their market value. As the court has reiterated in three orders (Dkt. ## 53, 56, 95), the value of the transparencies is what they would have fetched on the open market, despite Mr. Wilson's decision to eschew that market for these transparencies. No one, neither lawyer nor witness, may argue to the jury that the law is otherwise.[1]

The court does not rule out the possibility, however, that Mr. Wilson's disinterest in commercializing his work is relevant for other reasons. For example, Hartford might wish to argue that Mr. Wilson did not want to commercialize the transparencies because he believed they were of lesser quality than his commercial work. In addition, to the extent that there is any remaining material dispute over whether the transparencies were business property within the meaning of the Hartford policy, Mr. Wilson's intent may be relevant. Thus, the court makes no blanket prohibition on mentioning Mr. Wilson's non-commercial use of the transparencies.

Part 3

The court grants Mr. Wilson's motion to exclude evidence or argument that the "special limit clause" of the Hartford policy in some way limits the value of the transparencies. Hartford does not oppose the motion. Hartford points out, however, that the "special limit clause" is relevant to Mr. Wilson's allegations regarding its claims handling. The court concurs.

---

[1] Hartford's opposition to Part 2 of Mr. Wilson's motion includes a discussion of Ms. Davis's deposition testimony that repeats arguments Hartford made in its motion to exclude her as a witness. The court has already denied that motion, and declines to repeat its discussion of Hartford's counsel's inappropriate questioning here. To the extent that Hartford intends to rely on Ms. Davis's alleged "concessions" to impeach her at trial, it may not do so.

ORDER – 8

The court further rules that, as a matter of law, there is no difference between the valuation of "business property" and "personal property" under the Hartford policy. Hartford initially paid Mr. Wilson $2500 for the lost transparencies, under the belief that they were business property, and were worth at least the $2500 policy limit on property used primarily for business purposes. Eventually, Mr. Wilson convinced Hartford that the transparencies were not property primarily used for business purposes. Thereafter, Hartford decided that because the transparencies were not business property, they were worth only $324. Hartford is wrong, as a matter of law, in its belief that the value of property under its policy in some way depends on whether it can be categorized as "business property" or "personal property." The policy itself makes no such distinction, it simply imposes a special policy limit for certain business property. Nothing in either the policy or the law supports the notion that the value of property depends on whether it is business property or personal property. No witness and no attorney will be permitted to contend otherwise in front of the jury.

Part 4

Part 4 of Mr. Wilson's motion is essentially equivalent to Part 2. He asks that Hartford not be permitted to argue that Mr. Wilson's refusal to commercialize the transparencies at issue is equivalent to a "deed restriction" or other legal impediment that would somehow destroy the commercial value of the transparencies. He also asks that Hartford not be permitted to point to Ms. Davis's deposition testimony suggesting that Mr. Wilson had somehow created such a legal impediment. As the court has previously ruled, Hartford was able to obtain this testimony only by improper questioning. Hartford will neither be permitted to rely on her prior testimony for that purpose, nor to attempt to recreate such testimony at trial. *See infra* n.1. Again, the court has already ruled as a matter of law that Mr. Wilson's failure to commercialize the 108 transparencies is not relevant to determining their market value.

ORDER – 9

Part 5

Part 5 of Mr. Wilson's motion is essentially a mirror image of Part J of Hartford's motion. Mr. Wilson wants to offer evidence that Hartford paid substantially higher sums in resolving other claims for transparencies or photographic material. For the reasons already stated, the court finds this evidence potentially relevant. The court again reminds Mr. Wilson, however, that he must lay a proper foundation for the introduction of such evidence.

Part 6 and 7

The court addresses Parts 6 and 7 together because they address similar issues. It is undisputed that Mr. Wilson's policy provided only about $175,000 for personal property loss. If he had wanted more coverage, it presumably would have cost him more money, and perhaps would have even required an appraisal or other assessment of his property. In Hartford's view, if Mr. Wilson's transparences were worth as much as he is now claiming, he would have obtained additional insurance at an additional cost. Although Parts 6 and 7 of Mr. Wilson's motion refer broadly to Hartford's intent to refer to insurance premiums and "underwriting issues," it appears that the argument described above is the only one Hartford wishes to make involving premiums and underwriting

The court rules that Hartford may not present evidence or argument regarding Mr. Wilson's failure to obtain additional insurance or a higher policy limit for his personal property. Such evidence or argument has no relevance. Mr. Wilson seeks only the policy limit of his insurance. He was not required to obtain more insurance, and his failure to do so does not shed light on any material issue in the case.

Part 8

The court denies Mr. Wilson's motion to exclude any witness not identified in initial disclosures or discovery responses. Mr. Wilson fails to identify any specific witness. Should Hartford attempt to present testimony from a witness who it did not properly disclose, Mr. Wilson may object at trial.

ORDER – 10

Parts 9 through 12

Hartford does not oppose Mr. Wilson's motion to exclude evidence of Mr. Wilson's claim to the Washington Insurance Commissioner, reference to his claim for treble damages via the Insurance Fair Conduct Act, or references to the consequences of a damage award in this case. The court accordingly grants those motions.

The court also grants Mr. Wilson's unopposed motion to exclude witnesses from the courtroom until they have completed their testimony. This ruling will not apply to Mr. Wilson and Hartford's chosen trial representative. Fed. R. Evid. 615.

Part 13

The court denies Mr. Wilson's motion to exclude expert testimony from Linda Bowen, Hartford's claims-handling expert. The court denies the motion primarily because Mr. Wilson's motion to exclude her is fewer than two pages in length, and gives the court little basis to make a thorough evaluation of Ms. Bowen's testimony.

The court has, however, reviewed Ms. Bowen's report and has serious reservations about her testimony at trial. Ms. Bowen's opinions, which follow a lengthy recitation of the facts of this case as she understands them, consist largely of her interpretation of the law and her belief that Hartford complied with the law. The court will not permit Ms. Bowen to opine on what the law requires. Again, the court will be the sole source of legal instruction for the jury in this case. Similarly, Ms. Bowen will not be permitted to express her opinion on whether Hartford complied with the law. The jury, after receiving instruction from the court, will be the judge of Hartford's compliance.

With these limitations, it is unclear to the court what testimony Ms. Bowen has to offer. The court nonetheless declines to exclude her testimony entirely. It will be up to Hartford to determine whether she has admissible testimony to offer. The court will sustain any objections from Mr. Wilson in the event that Ms. Bowen attempts to usurp the court or jury's role in this case, and will consider a limiting instruction if necessary.

ORDER – 11

Part 14

The parties mutually concede that they need not raise further objection at trial to preserve their right to appeal any issue raised in their motions in limine. Accordingly, there is no need for the court to either grant or deny Mr. Wilson's motion on that issue.

**IV. CONCLUSION**

As stated above, the court GRANTS in part and DENIES in part the parties' motions in limine. Dkt. ## 65, 68.

DATED this 7th day of July, 2011.

*/s/ Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 12